**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Balar Equipment Corporation, an Arizona corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>VT Leeboy, Inc., a North Carolina corporation, fka B.R. Lee Industries, Inc., a North Carolina Corporation, John Does and Jane Does I-X, inclusive; Black and White Corporations I-X, inclusive, XYZ Partnerships I-X, inclusive,<br><br>        Defendants. | No. 07-CV-403-PHX-EHC<br><br>**ORDER** |

      Pending before the Court is Defendant VT Leeboy, Inc.'s ("Leeboy") "Motion to Dismiss Under the Federal Arbitration Act." (Dkt. 5). Because the Federal Arbitration Act does not explicitly provide for dismissal of claims subject to arbitration, the Court interprets Leeboy's motion as a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted.[1]

---

[1] See *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (holding, in part, that "the district court [did not] err in dismissing the plaintiff's claims that were subject to arbitration pursuant to Fed.R.Civ.P. 12(b)(6)" and explaining that "[a]lthough the Federal Arbitration Act 'provides for a stay pending compliance with a contractual arbitration clause ... a request for a stay is not mandatory.'") (quoting *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978).

### A. Background

This dispute arises out of an agreement entered into by Plaintiff and Defendant, in which Plaintiff "became the exclusive Arizona dealer for specified [Defendant]-manufactured equipment and related products." (Dkt. 5, p. 1). The initial term of the agreement was one year and the agreement included a provision for automatic one year renewals if no notice of termination was given sixty days prior to the end of the current term (Dkt. 5, p. 2). Defendant asserts that it timely notified Plaintiff of termination (Dkt. 5, p. 2). In response to Defendant's notice of termination, Plaintiff asserted that the agreement was subject to the Arizona Equipment Dealers Act ("Dealers Act"), A.R.S. §44-6701 *et seq*, and therefore could not be terminated absent the grounds enumerated in the Dealers Act. (Dkt. 5, p. 2). When Defendant refused to withdraw its termination notice, Plaintiff filed its complaint in Maricopa County Superior Court, alleging that Defendant violated A.R.S. § 44-6701, *et seq* (Dkt. 1, Exhibit A; Dkt. 5, p. 2). The Defendant removed the case pursuant to 28 U.S.C. § 1441(a) (Dkt. 1) and filed a "Motion to Dismiss Under the Federal Arbitration Act." (Dkt. 5).

### B. Motion to Dismiss

The Supreme Court recently retired the oft-quoted *Conley v. Gibson* language that long-defined the standard district courts were to apply when deciding motions to dismiss. See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968 (2007). The Court, however, reiterated that the accepted pleading standard remains unchanged: "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. The Court further reminded district courts weighing a motion to dismiss to ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 1969 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Id.* at 1965.

At dispute between the parties is the question of whether or not the "Leeboy Dealership Agreement" contains a valid arbitration clause. Section 11.1 of the Agreement provides, in relevant part:

> [I]f a dispute arises out of or relates to this Agreement, or the breach thereof, and if such dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation in Charlotte, North Carolina under the Commercial Mediation Rules of the American Arbitration Association, before resorting to arbitration, litigation, or some other dispute resolution procedure. In the event such mediation does not result in a suitable resolution of such dispute, then except as provided in subsection 11.2, any dispute, controversy, difference or claim arising out of, relating to or in connection with this Agreement, shall be finally settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect by three arbiters appointed in accordance with such rules. . . . The arbiters shall have power to grant equitable remedies in addition to imposing monetary damages. The arbiters' award shall be final and binding.

(Dkt. 10 at 6). Defendant argues that the extensive arbitration provision in Section 11.1 is binding, (Dkt. 5 at 3), and that the Federal Arbitration Act ("FAA") therefore "mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (Dkt. 5 at 3) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985)). Plaintiff counters that Section 11.1's arbitration clause is abrogated by Section 12, (Dkt. 6 at 3), which provides:

> Some states have laws that give you certain rights that may vary from, or are in addition to, those found in this Agreement. If your principal place of business is located in one of those states, this Agreement is deemed amended to the fullest extent necessary to provide you those rights.

(Dkt. 10 at 6). Plaintiff claims that this provision incorporates the terms of A.R.S. § 44-6701 *et seq*, providing Balar "the right to bring a court action for money damages if a manufacturer wrongly terminates the dealership (A.R.S. § 44-6708) and the right to void an out-of-state venue provision (A.R.S. § 44-6709)." (Dkt. 6 at 1-2).[2]

---

[2]While Defendant claims that A.R.S. 44-6701 *et seq* does not apply to Leeboy, for the purpose of a motion to dismiss, "[n]o matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Continental Collieries, Inc. v. Shober*, 130 F.2d 631, 635 (3rd Cir. 1942)).

- 3 -

The FAA states that

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA was intended "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds*, 470 U.S. at 219-20, 105 S.Ct. at 1242, and "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary...." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct., 927, 941 (1983).

While the policy favoring arbitration agreements creates "a presumption of arbitrability," *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419 (1986), the Supreme Court has repeatedly held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648, at 1418 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353; citing *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 570-71, 80 S.Ct. 1363, 1364-65); see also *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 1242 (1985) (the "passage of the [Arbitration] Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered...," and the Court warned against "overlook[ing] this principal objective when construing [a] statute, or allow[ing] the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation."). Therefore, the Federal Arbitration Act applies only to those disputes that the parties have contractually agreed to submit to arbitration.

"In construing an arbitration agreement, courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

944, 115 S.Ct. 1920 (1995)).  In Arizona, "[t]he courts will, if possible, so construe a contract as to carry into effect the reasonable intention of the parties if that can be ascertained.  The intent of the parties, *as ascertained by the language used*, must control interpretation of the contract."  *Park Central Development Co. v. Roberts Dry Goods, Inc.*, 11 Ariz.App. 58, 60, 461 P.2d 702, 704 (1969) (citations omitted) (emphasis added).

Defendant urges the Court to construe Section 12 as a general choice of law provision, similar to those at issue in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct.1212 (1995)[3] and *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998).[4] (Dkt. 9 at 6-8).  Defendant further suggests, therefore, that as in the aforementioned cases, Section 12 should be read "to incorporate . . . *only* the substantive provisions of the Act, not procedural provisions such as A.R.S. §[§] 44-6708 [and 44-]6709 upon which Balar relies." (Dkt. 9 at 7; see also Dkt. 9 at 8); *Mastrobuono*, 514 U.S. at 63-64; *Wolsey*, 144 F.3d at 1213.

In *Mastrobuono*, the Supreme Court commented that "[t]he choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship."  *Mastrobuono*, 514 U.S. at 59,115 S.Ct. at 1217.  In this case, however, Section 12 goes beyond dictating which state's law is applicable by explicitly *amending* the Agreement "to the fullest extent necessary to provide [Leeboy] those rights" granted by state law "that may vary from, or are in addition to, those found in [the] Agreement."  (Dkt. 10, Attachment at 6).  While the courts in *Mastrobuono* and *Wolsey* were forced to reconcile state laws with conflicting contract provisions, in the Agreement at issue, the word, "amend," removes any inconsistency between Sections 11.1 and 12, and thus the

---

[3]In *Mastrobuono*, the sentence preceding the arbitration clause in the contract at issue stated that the entire agreement "shall be governed by the laws of the State of New York." *Mastrobuono*, 514 U.S. at 58-59, 115 S.Ct. 1217.

[4]The contested choice-of-law provision in *Wolsey* provided: "[T]his Agreement between Foodmaker International and [Wolsey] shall be interpreted and construed under the laws of the State of California, U.S.A." *Wolsey*, 144 F.3d at 1209.

- 5 -

Court need not adopt an understanding of Section 12 similar to the courts' understandings of the choice-of-law provisions in *Mastrobuono* and *Wolsey*.

Plaintiff alleges that the parties *intended* to reject the mandatory arbitration clause provided in the Agreement. As parties are presumed to have contracted with knowledge of existing statutes, *Rhodes v. Republic Nat. Life Ins. Co.*, 501 F.2d 1213, 1216 (9th Cir. 1974)*,* such a reading is plausible. The Court, therefore, cannot conclusively determine that the arbitration clause contained within the Agreement is valid, such that the FAA would apply.[5] Therefore, while the Court finds Plaintiff's contention that the parties intended to void the arbitration provision to be improbable, for the purpose of a motion to dismiss, Plaintiff has adequately stated a claim such that Plaintiff will be "entitled to offer evidence to support the claim[]."[6] *Bell Atlantic*, 127 S.Ct. at 1969 n.8 (citations omitted).

Finally, regarding Defendant's preemption argument, because "[t]he FAA contains no express pre-emptive provision, nor does it reflect congressional intent to occupy the entire field of arbitration," *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888 (9th Cir. 2001) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468,

---

[5]Defendant cites *Brisco v. Meritplan Ins. Co.*, 132 Ariz. 72, 75, 643 P.2d 1042, 1045 (Ct. App. 1982) for the proposition that "[t]he Court will adopt such construction as will harmonize all parts of the contract, and conflicting provisions will be reconciled by a reasonable interpretation in view of the entire instrument." (Dkt. 9 at 4). Nonetheless, the language of the contract is, at best, ambiguous, and in a motion to dismiss, Defendant "cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono*, 514 U.S. at 62, 115 S.Ct. at 1219 (citations omitted). If the contract language is, in fact, ambiguous, Defendant "drafted an ambiguous document, and . . . cannot now claim the benefit of the doubt." *Id.* at 63, at 1219.

[6]See *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) ("The parol evidence rule prohibits introduction of a prior or contemporaneous agreement which would vary or contradict the clear and unambiguous language in a contract. Notwithstanding, if 'the language contained in the contract is ambiguous or silent as to essential terms then oral testimony may be properly admitted into evidence.'") (citations omitted); see also *Johnson v. Cavan*, 152 Ariz. 452, 733 P.2d 649 (Ct. App. 1986) (holding, in part, that the trial court erred in assuming "the meaning of the terms of the lease without considering evidence on the parties' intent and the surrounding circumstances.")

474, 109 S.Ct. 1248 (1989)), state law is only preempted "to the extent that it actually conflicts with federal law-that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Bradley*, 275 F.3d at 888 (quoting *Volt*, 489 U.S. at 474; *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399 (1941)).  Because the plain meaning of the Agreement demonstrates that the parties intended the Agreement to specifically incorporate the relevant state law, and for the purposes of a motion to dismiss the Court must assume that A.R.S. § 44-6701, *et seq* applies, there is no conflict between state and federal law because a) the state law does not apply specifically to arbitration agreements, and b) the arbitration agreement is not completely negated, but is simply not applicable when A.R.S. § 44-6701, *et seq* is allegedly violated.

Accordingly,

**IT IS ORDERED DENYING** Defendant's Motion to Dismiss under the Federal Arbitration Act (Dkt. 5).

DATED this 24th day of August, 2007.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge